

## Subscription Agreement

1880 N Commerce Parkway Suite 2 • Weston • Florida 33326 • USA • Fax: 855-907-0115

AGREEMENT # 00010026
DATE: 12/05/2018
VENUS SALES REP: Brandon Gable
CUSTOMER #

### Subscription Agreement

This Subscription Agreement is made this day of 12/5/18 between Venus Concept USA Inc. ("**Venus Concept**") and Atlanta Health Clinic ("**Customer**").

### Customer Information

Legal Name: Atlanta Health Clinic
Contact: Mark Sentell

Phone: 7068172176
Fax:
Mobile:
Email: markase54@gmail.com

Billing Address:
2480 Windy Hill Rd SE
#404
Marietta, Georgia 30067

Shipping Address:
2480 Windy Hill Rd SE
#404
Marietta, Georgia 30067

### Equipment Information

| Product | Description | Price | Quantity | Total |
|---|---|---|---|---|
| 3 Year Warranty | warranty | 0.00 | 1.00 | 0.00 |
| Versa Marketing Kit | Versa Clinical Casebook, Pack of Versa Patient Brochure per treatments, Versa Roll up | 0.00 | 1.00 | 0.00 |
| HR650 | 30 x 10 mm Versa IPL | 0.00 | 1.00 | 0.00 |
| ACNE DUAL | 30 x 10 mm Versa IPL | 0.00 | 1.00 | 0.00 |
| HR650XL | 30 x 20 mm Versa IPL | 0.00 | 1.00 | 0.00 |
| HR690 | 30 x 10 mm Versa IPL | 0.00 | 1.00 | 0.00 |
| Versa Viva applicator | Versa RF Applicator, 5 NanoFractional RF Tips | 0.00 | 1.00 | 0.00 |
| Patient Eye Protection Shields | Patient eye protection shields for use during treatment using the Venus Versa or Venus Velocity | 0.00 | 1.00 | 0.00 |
| SR515 | 30 x 10 mm Versa IPL | 0.00 | 1.00 | 0.00 |
| SR580 | 30 x 10 mm Versa IPL | 0.00 | 1.00 | 0.00 |
| Venus Versa | Versa Basic System, 4 Bottles 8 Oz Ultrasound Gel (Clear), 1 Pair of Patient Protective Eye Wear, 2 Pairs of Technician Protective Eye Wear, Operating Manual | 105,000.00 | 1.00 | 105,000.00 |
| Versa Diamondpolar | Versa RF Applicator and 1 Bottle 32 Oz Glide, 1 Canister of Wipes, 1 External Thermal Body Temperature Monitor per RF Bundle | 0.00 | 1.00 | 0.00 |
| Versa Octipolar | Versa RF Applicator and 1 Bottle 32 Oz Glide, 1 Canister of Wipes, 1 External Thermal Body Temperature Monitor per RF Bundle | 0.00 | 1.00 | 0.00 |
| HR690XL | 30 x 20 mm Versa IPL | 0.00 | 1.00 | 0.00 |
| | | | Shipping | 500.00 |
| | | | Aggregate Amount: | 105,500 |

### Warranty

The Aggregate Amount includes manufacturer warranty (the "**Warranty Period**") as detailed in the table above and as more fully described in the T&C attached hereto.

### General Conditions

This is a legal, binding document. We encourage you to review it carefully in conjunction with the Terms and Conditions for this Agreement attached hereto as Exhibit A ("**T&C**"), which form an integral part of this Subscription Agreement.

EXHIBIT "A"



## Subscription Agreement

1880 N Commerce Parkway Suite 2 • Weston • Florida
33326 • USA • Fax: 855-907-0115

AGREEMENT # 00010026
DATE: 12/05/2018
VENUS SALES REP: Brandon Gable
CUSTOMER #

### Payment Terms

The payment by the Customer of the Aggregate Amount (as indicated above) shall be as outlined in the table below and as further described in Sections A. and B.:

| Line | Number of Payments | Amount | Tax | Payment Due | Total Amount | Comments |
|---|---|---|---|---|---|---|
| 1 | 1 | 10,000.00 | 600.00 | 10,600.00 | 10,600.00 | License Fee of $11,130 includes shipping and applicable taxes due upon signing |
| 2 | 36 | 2,638.89 | 158.33 | 2,797.22 | 100,700.00 | Monthly Installments commence 2-25-2019 |



**Subscription Agreement**

1880 N Commerce Parkway Suite 2 • Weston • Florida 33326 • USA • Fax: 855-907-0115

AGREEMENT # 00010026
DATE: 12/05/2018
VENUS SALES REP: Brandon Gable
CUSTOMER #

### A. License Fee And Shipping Charge

The Customer shall pay the License Fee and Shipping Charge as outlined in the table above (the "**License Fee**") upon signing; The License Fee shall give the Customer the right to use the system in accordance with and subject to the T&C.

### B. Monthly Installments

The Customer shall pay to Venus Concept during the Term (as defined in the T&C), the balance of the Aggregate Amount in monthly installments as outlined in the table above, commencing upon the thirtieth (30th) day from the estimated date of delivery and payable every thirty (30) days thereafter ("**Monthly Installments**").

The terms offered herein expire if this Agreement is not signed on or before 12/5/18.

**Disclaimer**

The applicable tax amounts are calculated for convenience only. In any case of discrepancy between the tax rate used in the calculation above and the tax rate enacted as of the billing date of the License Fee and/or the Monthly Installments ("**Enacted Tax Rate**"), the amounts collected and remitted will be in accordance with the Enacted Tax Rate.

**Personal Guaranty**

The undersigned unconditionally personally guarantees to Venus Concept that he/she will make all payments and meet all obligations required under this Agreement. The undersigned expressly consents to the jurisdiction of the court set out in the Terms and Conditions of this agreement.

| Signature of Personal Guarantor | Phillip Wofford / Mark A. Suarez  Print Name | 770-547-5190  706 827 2168  Home Phone Number |

**Acknowledgement and Acceptance**

Venus Concept:
This Agreement shall not become binding until Venus Concept has accepted the Agreement.

Print Name:
Carmen Hurtado

Title:
Operations Controller

Date:
12/06/18

Authorized Signature:

Customer:
The undersigned acknowledges having read the entire Agreement and accepts the Terms and Conditions.

Print Name:
Phillip Wofford

Title:
Director

Date:
12/5/18

The Undersigned Has Authorization to Sign on Behalf of the Customer

Authorized Signature:

**Any changes must be initaled only by Subscription Agreement Signatories**



**VENUSCONCEPT**
delivering the promise

**Subscription Agreement**

1880 N Commerce Parkway Suite 2 • Weston • Florida 33326 • USA • Fax: 855-907-0115

AGREEMENT # 00010026
DATE: 12/05/2018
VENUS SALES REP: Brandon Gable
CUSTOMER #

## Exhibit A to Venus Concept Subscription Agreement

### TERMS AND CONDITIONS

(the "**Conditions**", and together with the Subscription Agreement, the "**Agreement**")

This Exhibit A supplements the terms and conditions of the Subscription Agreement to which it is attached, by and between Venus Concept and the Customer whose details are specified in the Subscription Agreement. Capitalized terms not specifically defined herein shall have the meaning ascribed thereto in the Subscription Agreement. Venus Concept and the Customer hereby agree as follows:

**1. Nature of the Transaction** – Subject to the terms and conditions set forth herein, Venus Concept agrees: (A) to deliver to the Customer, and Customer agrees to receive from Venus Concept the equipment described in the Subscription Agreement to which these Conditions are attached (the "**Equipment**") and the limited warranty, periodic practice and clinical training services as more fully specified herein (the "**Services**"); and (B) to grant the Customer for the Term of this Agreement (as defined below) a revocable, non-exclusive, non-transferable, limited right to use the applications and software owned by Venus Concept and incorporated into or used in conjunction with the Equipment (the "**Programs**") (the Equipment, together with the incorporated Programs shall be referred to herein as the "**System**"). Customer's rights in the Programs are expressly limited to the use of the Programs by Customer as part of and in conjunction with the use of the System. Customer shall not: (i) assign, transfer, or sublicense the Programs; and/or (ii) reverse engineer or decompile the source code thereof. Any term not otherwise expressly defined herein shall have the meaning ascribed thereto in the Subscription Agreement.

**2. Term** – This Agreement shall become effective upon the execution thereof and shall remain in full force and effect until terminated pursuant to the terms and conditions set forth herein (the "**Term**").

**3. System Selection** – The Customer has personally selected the System. Venus Concept is not providing any medical care to Customer's patients or any assistance to Customer in connection with the selection or performance of medical procedures and/or care of Customer's patients. Customer has the sole and ultimate responsibility for any medical and/or surgical or other procedures performed through, in conjunction with, or by the use in any way, of the System. Customer assumes and has sole responsibility and liability for providing adequate and effective safeguards and safety Systems necessary to provide a safe facility and to fully protect all Customer personnel, patients and third parties that may come in contact with the system from bodily injury, death or other damage that otherwise may result from the use, operation, setup or maintenance of the System. Customer agrees to indemnify, defend and hold Venus Concept at its first demand harmless from any and all expenses, costs and damages, including attorney's fees, in respect of any claims for bodily injury, death or other damage arising out of the use of the System, including, without limitation, any medical and/or surgical procedures performed by the Customer using the System unless said bodily injury, death or other damage is caused solely by the gross negligence of Venus Concept or solely as a result of a material defect in the System.

**4. Delivery** – The System shall be deemed delivered upon delivery thereof to a carrier. Installation of the Equipment will be made at the customer's location that is specified in the Subscription Agreement (the "**Delivery Location**") with respect to which the Customer represents that is owned or leased thereby. Without limiting the generality of the above, Venus Concept shall not be liable for any loss or damage resulting from any delay of delivery or failure to deliver which is due to any cause beyond our control. In the event of delay due to any such cause, time for delivery shall be extended for a period equal to the duration of the delay and the Customer shall not be entitled to refuse delivery or otherwise be relieved from any obligations as a result of the delay. If, as a result of any such cause, any scheduled delivery is delayed for a period in excess of thirty (30) days, Venus Concept may, at its own option, by written notice to the Customer, cancel the delivery and all future deliveries without further liability or obligation of any kind. Equipment on which delivery is delayed due to any cause within the Customer's control may be placed in storage by Venus Concept at the Customer's risk and for its account. The Customer shall be liable for all costs and expenses incurred by Venus Concept in holding or storing Equipment for the Customer or at the Customer's request.

**5. Delivery Methods & Delivery Insurance** – Unless specific written instructions to the contrary are supplied by the Customer, methods and routes of delivery will be selected by Venus Concept but Venus Concept will not assume any liability in connection with delivery nor shall the carrier be considered Venus Concept's agent. All deliveries will be insured at the Customer's expense and made at the Customer's risk, and the Customer shall be responsible for making all claims with carriers, insurers, warehousemen and others for miss-delivery, non-delivery, loss, damage or delay

**6. Title and Risk of Loss** – Subject to Section 5 and to Venus Concept right to stop delivery of Equipment in transit, title to and risk of loss for Equipment shall pass to the Customer upon delivery to the carrier pursuant to Section 5. Customer shall, at its expense, insure the Equipment in favour of Venus Concept until the Aggregate Amount is paid in full.

**7. Training** – Venus Concept shall provide the Customer with the opportunity, free of charge and within 4 weeks of Delivery of the System, a one-time basic System-operation training session for up to six (6) participants of the Customer's personnel, as may be necessary for them to operate and use the System in accordance with Venus Concept's user manuals ("**Basic Operation Training**"). In the event that the Customer requests an immediate Basic Operation Training (i.e. to occur within 2 weeks of Delivery of the System), or requests supplementary training in addition to the Basic Operation Training, such trainings will be charged in accordance with the Company's current rate schedule.

**8. Use** – The customer shall use the System in a careful and prudent manner, in accordance with the instructions and manual provided to him/her by Venus Concept, and not for any unlawful purpose and shall at his/her expense, comply with and conform, and shall cause any and all of his/her personnel to comply with and to conform to all applicable laws, ordinances and regulations (including laws, ordinances and regulations concerning environmental matters) relating to the possession, use or maintenance of the System. The System shall be operated and used only by those persons who are authorized and qualified to operate such systems, pursuant to applicable law and Venus Concept's instructions and manual. The customer shall only use the System in connection with his/her business and only for professional purposes.

**9. Limited Warranty**
a. <u>What Is Covered</u>: a. Venus Concept grants a limited warranty for the System as specified in this Section 9 ("**Limited Warranty**"). This Limited Warranty covers defects in material and workmanship in the (i) System, (ii) applicators purchased at the same time that a System is purchased (the "**Bundled Applicators**"), and (iii) applicators purchased separately from a System (the "**Stand-Alone Applicators**") as identified in the Subscription Agreement.

Case 1:21-cv-21417-FAM   Document 1-1   Entered on FLSD Docket 04/13/2021   Page 5 of 7



**Subscription Agreement**

1880 N Commerce Parkway Suite 2 • Weston • Florida
33326 • USA • Fax: 855-907-0115

AGREEMENT # 00010026
DATE: 12/05/2018
VENUS SALES REP: Brandon Gable
CUSTOMER #

b. <u>Who is Covered:</u> This Limited Warranty extends solely to the Customer who purchased the System from Venus Concept. This Limited Warranty is non-transferable and non-assignable by the Customer. Venus Concept shall have no obligations from claims made under a transferred warranty in the event that the Customer attempts an assignment of the Customer's rights under this Limited Warranty.

c. <u>Suspension of Warranty Coverage:</u> Service coverage under this Limited Warranty will be automatically suspended in the event of Default and/or during any period that Customer retains possession of a Loaner (defined below). It is clarified that the Warranty Period will continue to run during the time of Default.

d. <u>What Venus Concept Will Do:</u> Venus Concept will, within the applicable Warranty Period, at Venus Concept's sole option, repair or replace any defects in material or workmanship in the System without any costs to the Customer for parts or labor (except as specifically stated below). To the extent that Venus Concept determines that it should replace a System, Venus Concept may do so using another System that is of the same model and in good working condition. If Venus Concept determines that it is necessary for the Customer to return any System/applicators for warranty service, Venus Concept will use its best efforts to deliver a service loaner System (the "**Loaner**") to the Customer within one (1) to three (3) business days following such request.

e. <u>What is Not Covered:</u> This Limited Warranty does not cover any defects and damages caused by the fact that the System, including Stand-Alone Applicators and Bundled Applicators, have been subject to: improper installation, unauthorized opening or repair, repair by use of unauthorized accessories or spare parts, accident, misuse (including improper storage), rough handling, abuse, and/or modification of the System, in the Customer's transportation of the System, by an act of God, use of the System in violation of the manuals and/or instructions, the use with accessories not manufactured and supplied by Venus Concept, the use for any purpose other than one for which the System was manufactured, damage caused by unauthorized parts, and/or requests for repair for any other problem that Venus Concept cannot replicate (collectively and individually "**Excluded Repairs**"). If Venus Concept assumes the repair of an Excluded Repair, Venus Concept will bill the Customer for Excluded Repairs on an hourly basis according to Venus Concept's then prevailing price list plus the cost of the parts, shipping costs and Venus Concept's then current handling fee for the inspection and diagnosis of each of the Excluded Repairs.

f. <u>Warranty Cancellation; Limitation:</u> Venus Concept may cancel or limit the Limited Warranty if it is found that treatments are performed without the use of the Venus Concept proprietary Glide Glycerin product. Failure to use this specially formulated glycerin could lead to patient complications, less than optimal clinical results, increased patient discomfort and equipment failure. Notwithstanding anything to the contrary herein, the maximum liability of Venus Concept to a Customer shall not exceed the payments actually received by Venus Concept from Customer.

The warranties provided in this Section 10 constitute Venus Concept's sole and exclusive liability for defective or nonconforming Systems and shall constitute Customer's sole and exclusive remedy for defective or nonconforming Systems. These warranties are in lieu of all other warranties express or implied or statutory, including, but not limited to, implied warranties of merchantability or fitness for a particular purpose, and are in lieu of all obligations or liabilities on the part of Venus Concept for damages. EXCEPT AS EXPRESSLY SET FORTH HEREIN, VENUS CONCEPT SHALL NOT BE LIABLE AND IS FURNISHING NO OTHER WARRANTIES AND THE CUSTOMER ASSUMES ALL RISK IN CONNECTION WITH THE USE OF THE EQUIPMENT AND SYSTEMS OTHER THAN AS EXPRESSLY STATED HEREIN.

**10. Title and Identification** – Subject to the payment by Customer of the Aggregate Amount, the Equipment is and shall at all times be and remain the sole property of the Customer and Customer shall have the exclusive right, title and interest in or to the Equipment except as expressly set forth herein. Notwithstanding the foregoing, until the Aggregate Amount is paid in full, the Customer shall not allow the Equipment to become subject to any claim, privilege, lien, charge, encumbrance, levy, security interest, mortgage, pledge, hypothecation, seizure, trust, attachment, judicial process, ownership interest, license, sublease or other right in favor of any person (in any such case an "**Encumbrance**") unless such Encumbrance is authorized by Venus Concept in writing. The Customer shall not sublet, lease, rent or part with possession or control of the System or permit its use by any person other than the Customer or employees of the Customer who are qualified and competent to operate the System. Venus Concept shall have the right to inspect the System and the Customer's insurance records at any time. At Venus Concept's request, the Customer shall at the Customer's expense affix and maintain the Equipment, in a manner and places satisfactory to Venus Concept, labels, plates or other marks supplied by Venus Concept to identify the Equipment as manufactured by Venus Concept.

**11. Insurance** – Customer shall, at its own expense, place and maintain a general liability insurance in adequate amounts as customary in the industry for the System, which covers liabilities for damages on account of bodily or personal injury or death to any person, or damages to property of any person or entity. Such insurance shall extend to all liabilities of the Customer arising out of its use or possession of the System and shall include Venus Concept as an additional insured.

**12. Quality Control and Branding** – Customer acknowledges that activation code is required in order to operate the System. Venus Concept shall provide the Customers with such activation codes, on a monthly basis subject to Customer's compliance with Venus Concept's technical, quality and safety inspection standards, and provided that all Customer's financial obligations are met. Customer agrees not to use the images, names, trademarks or logos related to Venus Concept and its products, including wording that refers specifically to Venus Concept's technology (i.e. combining RF and Pulsed Magnetic fields, etc.) for promotional activities through group buying providers such as Groupon, Living Social or any other vehicle by which significant discounts are promoted without the prior written consent of Venus Concept. This type of marketing activity could be deemed as a material breach of the Agreement. "Venus" is a registered trademark of Venus Concept and cannot be used in any advertising without the prior expressed written consent of Venus Concept. Failure to comply may cause irreparable damage to Venus Concept and therefore may result in financial penalties. In the event of failure to comply, Venus Concept reserves the right to take any action necessary to rectify the breach of the agreement. This action may include (but may not be limited to) denying activation code(s) for an unlimited period of time, and/or terminating the agreement.

**13. Default** – Each of the following is a material default by the Customer (a "**Default**"):
a. The Customer fails to make any payment or pay any other amounts due under this Agreement (as may be amended from time to time) within ten (10) days after the same is due and payable (or earlier if required pursuant to the Agreement); or
b. Any representation or warranty made by the Customer to Venus Concept in or in connection with this Agreement is incorrect; or
c. Any breach of Section 10 above, or if the value of the System is materially impaired due to a loss, damage, destruction, theft, seizure or governmental taking of the goods or any part thereof (any such case being a "**Loss**") during the period that any payment is outstanding and   unpaid; or
d. The Customer makes any assignment for the benefit of its creditors, becomes insolvent, commits any act of bankruptcy, takes any action to wind up or dissolve, ceases or threatens to cease to do business as a going concern, is subject to a change in control in fact or in law or   seeks any arrangement or composition with its creditors; or any proceeding in bankruptcy,

Page 5 of 7  Customer Initials: _pw_



**Subscription Agreement**

1880 N Commerce Parkway Suite 2 • Weston • Florida
33326 • USA • Fax: 855-907-0115

AGREEMENT # 00010026
DATE: 12/05/2018
VENUS SALES REP: Brandon Gable
CUSTOMER #

receivership, winding-up, dissolution, liquidation or insolvency is commenced by or against the Customer or its property; or

e. Venus Concept in good faith believes that the prospect of payment or performance by the Customer under this Agreement is or is about to be impaired or the System is or is about to be placed in jeopardy; or

f. The Customer has made representations or promises to its clients or otherwise in the framework of sales promotions or marketing activity which are in contradiction with, or are not included in Venus Concept's user manuals and materials; or

g. In the event that Customer terminates this Agreement before paying the Aggregate Amount for the System.

**14. Effect of Default** – In the event of any Default, Venus Concept may take any one of the following actions (separately or cumulatively): (i) terminate this Agreement with immediate effect and in such case the provisions of Section 15 below shall apply; (ii) without notice to the Customer or resort to legal process, remotely disconnect or otherwise disable the operation of the System; and/or (iii) cease providing the Customer with the Services (including the Limited Warranty for the System). (iv) obtain credit bureaus reports and /or any other searches or enquiries to determine credit worthiness.

**15. Effect of Termination or Expiration** – In the event of termination or expiration of this Agreement, the following shall apply:
The Customer shall pay forthwith (without notice) to Venus Concept as liquidated damages, and not as a penalty, an amount (the "**Liquidated Damages**") equal to the aggregate of:

(i) Unpaid payments and other amounts payable hereunder and unpaid as of the date of Default, and

(ii) The unpaid value of:
(A) Any remaining Monthly Installment payable from the date of Default, and
(B) Amounts otherwise payable under the Agreement, and

(iii) Any Enforcement Costs (as defined below) incurred by Venus Concept, and

(iv) Interest thereon (as defined below) from the date of the Default until payment in full.

To the extent that the Liquidated Damages are deemed to include any Taxes which Venus Concept is required to remit to any taxation authority, the Liquidated Damages shall be increased by the amount necessary to ensure that the net amount of the Liquidated Damages retained by Venus Concept after remitting all applicable Taxes will be equal to the amount calculated above;

a. Upon Venus Concept's demand, the Customer, at the Customer's expense, shall forthwith surrender control of the System to Venus Concept pursuant to Section 17.
b. The rights of the Customer hereunder in respect of the System, including the right to use and possess the System, shall cease and terminate absolutely and the Customer shall immediately cease using the Equipment, the Programs or any portion thereof.

All rights and remedies of Venus Concept, either under this Agreement or at law or in equity or otherwise afforded to Venus Concept, are cumulative and not alternative. Venus Concept's costs and expenses incurred as a result of a Default ("**Enforcement Costs**") (including all costs and expenses in respect of collection, legal fees, repossession, repair of System, enforcement of Venus Concept's rights or remedies, sale or re-lease costs or other realization costs) shall be paid by the Customer to Venus Concept forthwith on demand, with Interest accruing thereon from the date such costs and expenses were incurred until payment in full.

The provisions of Sections 9-18, 19, 22, and the Subscription Agreement shall survive the termination of this Agreement. The Liquidated Damages shall not be in lieu of any other damages incurred by Venus Concept and which would otherwise give rise to a claim by Venus Concept for indemnification or breach against the Customer pursuant to this Agreement which amounts or equitable remedies may be separately recovered by Venus Concept in addition to the Liquidated Damages.

**16. Interest on Overdue Payments** – The Customer shall, without notice, pay interest at the rate of the lower of (i) eighteen percent (18%) per annum; or (ii) the highest interest rate permitted under applicable law, calculated and compounded monthly (the "Interest"), on any payments which have become due pursuant to this Agreement and have not been paid on their due dates, from the date any such amount becomes due or interest bearing, before and after maturity, default and judgment until such arrears or other amounts are paid in full.

**17. Surrender** – In the event of termination of this Agreement, the Customer, at its expense shall immediately surrender control of the System to Venus Concept as provided below. In such events, Customer shall: (a) return the System to Venus Concept at Venus Concept's nearest office or other place specified by Venus Concept, or (b) if requested by Venus Concept, dispose of the System as Venus Concept reasonably directs, including disposition in a manner which will avoid any dangerous use thereof or damage or injury to any person or property therefrom. The Customer hereby irrevocably agrees that if the System is not returned to Venus Concept as provided above, Venus Concept in its sole and absolute discretion, may, immediately, at any time: (i) subject to applicable law, take possession of the System or take any action it deems necessary to cause the cessation of the operation of the System, and such actions in no event shall be deemed as a breach by Venus Concept of its obligations hereunder; and (ii) the provisions of the Limited Warranty contained herein shall not apply to any such System and Venus Concept shall be entitled and the Customer hereby irrevocably agrees and instructs Venus Concept to take any action it deems necessary (subject to applicable law) to disconnect, disable or otherwise cause the cessation of the operation of the System. Wherever the Customer is required to return the System to Venus Concept the System shall be in good repair, condition and working order and the Customer shall pay all cost of maintenance and restoration of System returned to Venus Concept necessary to restore it to its condition on the date this Agreement commenced, normal wear and tear excepted. The Customer shall, if Venus Concept so requests, store the System at the Customer's risk and expense and as Venus Concept agent for a period of up to ninety (90) days after the end of the Term. The Customer shall not use the System or pay payments for the System during such period but shall otherwise be bound by all terms of this Agreement during such period.

**18. Indemnity** – The Customer hereby indemnifies Venus Concept and agrees to save Venus Concept harmless from and against all loss, cost, liabilities, claims, legal proceedings and expenses (including legal fees and costs) whatsoever arising from the misuse, Loss or return of the System the recovery of claims under any insurance policy relating to the System and any Default by the Customer.



**Subscription Agreement**

1880 N Commerce Parkway Suite 2 • Weston • Florida
33326 • USA • Fax: 855-907-0115

AGREEMENT # 00010026
DATE: 12/05/2018
VENUS SALES REP: Brandon Gable
CUSTOMER #

**19. Assignment** – This Agreement and all rights, remedies and benefits of Venus Concept hereunder may be assigned by Venus Concept without notice to or the consent of the Customer and the Customer hereby accepts such assignments and waives any claim with respect to the act of assignment and the delivery of a copy of any assignment document. Neither this Agreement nor the Customer's rights hereunder shall be assigned by the Customer, except with Venus Concept's prior written consent and no assignment shall release the Customer from its obligations hereunder.

**20. Name Change** – The Customer shall promptly notify Venus Concept in writing of: (a) any change in the Customer's name; (b) any transfer, authorized or unauthorized, by the Customer of any interest in or benefit from the System; (c) any change, authorized or unauthorized, by the Customer in the location of any System; and (d) any change in location of the Customer's Head Office specified above.

**21. Information and Privacy** –
a. Confidential Information: All information regarding either party's business which has been marked or is otherwise communicated as being "proprietary" or "confidential," or which reasonably should be known by Venus Concept to be proprietary or confidential information. Without limiting the generality of the foregoing, Confidential Information shall include without limitation, even if not marked, this Agreement, promotional materials, proposals, quotes, rate information, and invoices, as well as the parties' communications regarding such items;
b. Disclosure and Use: All Confidential Information concerning the Customer shall be kept by Venus Concept in strict confidence and shall not be disclosed to any third party without the Customer's express written consent. Notwithstanding the foregoing, such information may be disclosed to Venus Concept's employees, affiliates, and agents who have a need to know for the purpose of performing this Agreement (provided that in all cases Venus Concept shall take appropriate measures prior to disclosure to its employees, affiliates, and agents to assure against unauthorized use or disclosure). Each party agrees to treat all Confidential Information of the other in the same manner as it treats its own proprietary information, but in no case using a degree of care less than a reasonable degree of care;
c. Exceptions: Notwithstanding the foregoing, each party's confidentiality obligations hereunder shall not apply to information that: (i) is already known to Venus Concept without a pre-existing restriction as to disclosure; (ii) is or becomes publicly available without fault of Venus Concept; (iii) is rightfully obtained by Venus Concept from a third party without restriction as to disclosure, or is approved for release by written authorization of the Customer; (iv) is developed independently by Venus Concept without use of the Customer's Confidential Information; or (v) is required to be disclosed by law or regulation;
d. Remedies: Notwithstanding any other Section of this Agreement, the non-breaching party shall be entitled to seek equitable relief to protect its interests pursuant to this Section 21, including, but not limited to, injunctive relief
e. Collection of Usage Date: Customer acknowledges that Venus Concept collects data on the use of the System ("Usage Data") using a connectivity feature embedded in the System. Usage Data is collected for billing, system unlock code transfers, statistical analysis, product performance and improvements, and marketing. Usage Data does not include, and Venus Concept does not collect, personal data on patients. The Customer may, however, insert to the System non-identifiable patient data, such as age, gender and ethnicity, and such data will be considered Usage Data. Customer hereby agrees to the collection of Usage Data in accordance with this Section

**22. Representations/Warranties** – Customer represents, warrants and covenants to Venus Concept that (i) Customer has reviewed this Agreement and this Exhibit A, has had an opportunity to consult with legal counsel, (ii) this Agreement is a legally valid and binding agreement enforceable against Customer, (iii) the execution and performance of this Agreement by Customer will not be in breach or violation of any other contract (including restrictive covenant), court order, or law to which Customer is subject, and (iv) Customer has reviewed Venus Concept's user manuals, has had an opportunity to ask questions and receive answers from Venus Concept, and shall utilize the Equipment and Systems in strict compliance with the foregoing.

**23. General Provisions** – This Agreement shall be governed and construed by the laws of Florida and without giving effect to conflict of laws principles thereof, and only the competent courts in Miami, Florida, shall have jurisdiction in any conflict or dispute arising out of or relating to the Agreement or the transactions contemplated hereby. Each party expressly acknowledges and irrevocably submits to Miami, Florida, as an appropriate venue for any matter in the Subscription Agreement or hereunder and covenants not to challenge such venue. This Agreement may be executed in counterparts, each of which shall be deemed an original. Signature pages executed by a party and transmitted via facsimile or electronic pdf shall be deemed as originals. In the event that any provision of the Subscription Agreement or this Exhibit A is deemed unenforceable by a court of law, such provision shall be severed and the remainder of the Subscription Agreement and this Exhibit A shall remain fully enforceable and a legally binding obligation. For the avoidance of doubt, any reference to "Agreement" shall include both the Subscription Agreement and this Exhibit A. Any notice to be given hereunder shall be delivered to the address of the respective party set forth in this Agreement and shall be deemed received upon (i) receipt if delivered by hand; (ii) the next business day, if sent by overnight courier of a national reputation (i.e., FedEx, UPS); (iii) upon receipt of delivery confirmation if sent via facsimile or email; or (iv) five (5) business days if sent by U.S. certified mail, return receipt requested.